**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**TD HOLDINGS, INC.**

       **Plaintiff,**

**vs.**                          **Case No. _____**

**IFG OPPORTUNITY FUND, LLC,**

       **Defendant.**

_____/

**PLAINTIFF TD HOLDINGS INC.'S COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF SOUGHT**

Plaintiff TD Holdings, Inc. ("TD Holdings" or "Plaintiff") states its Complaint against Defendant IFG Opportunity Fund, LLC ("Defendant") for declaratory relief under 28 U.S.C. § 2201(a).  In addition, TD Holdings seeks a preliminary and permanent injunction restraining Defendant from prosecuting its claims against TD Holdings in an ongoing arbitration before the International Centre for Dispute Resolution of the American Arbitration Association ("ICDR").

## I.    PARTIES

1.    Plaintiff TD Holdings, Inc. is a Delaware corporation with its principal place of business in Shenzhen, China.

2.    Defendant IFG Opportunity Fund is a Florida Limited Liability Company with its principal place of business at 6151 Lake Osprey Drive, Suite 300, Sarasota, Florida, 34240.

3.    Defendant's manager is Anthony Gentile, a citizen of Florida.

4.    Defendant's member is Zeily Castrillo, a citizen of Florida.

5.    No member of Defendant is a citizen of Delaware or China.

## II.     JURISDICTION AND VENUE

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 (a)(2) because the matter in controversy exceeds the sum of $75,000 and is between a limited liability company defendant, whose manager and member are citizens of Florida, and a plaintiff who is a foreign state's citizen.

7.      Pursuant to 28 U.S.C. § 2201(a), this Court has jurisdiction to declare the rights, status, and other equitable or legal relations whether or not further relief is or could be claimed.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(1), because Defendant's principal place of business is in Sarasota, Florida, and its manager and member are residents of Bradenton, Florida.

## III.     FACTUAL ALLEGATIONS

### A.  *Defendant's Pending Arbitration with the American Arbitration Association*

9.      Non-Party Guotao Deng commenced an arbitration proceeding against Defendant with the ICDR in Orlando, Florida, on or about November 4, 2020.

10.     Mr. Deng's arbitration demand to Defendant (the "Arbitration Demand"),  alleged that on August 17, 2020, Mr. Deng entered into a Structured Transaction Agreement (the "Agreement") with Defendant for a non-recourse structured loan in the amount of approximately $3,675,750.00, secured by 1.5 million shares of Mr. Deng's TD Holdings Inc. common stock, which Mr. Deng provided as collateral for the anticipated transaction (hereafter the "GLG Common Stock"[1] or the "Collateral").  A true and correct copy of Mr. Deng's Arbitration Demand is attached hereto and incorporated herein as **Exhibit A.**

---

[1] TD Holdings Inc.'s stock is traded on Nasdaq as "GLG."

11.     Mr. Deng further alleged in his Arbitration Demand that, according to the Agreement, Defendant would provide a structured lending transaction and custodial services to Mr. Deng in connection with the Collateral.

12.     Mr. Deng also alleged in his Arbitration Demand that on September 2, 2020, Mr. Deng, through his agent, caused VStock Transfer[2] to transfer the Collateral to Defendant and that prior to Defendant's finalization of the secured loan transaction and in accordance with the Agreement, Mr. Deng communicated his desire that he and Defendant agree upon an acceptable price limit for the shares contained in the Collateral.

13.     Mr. Deng further alleged that despite assurances from Defendant, as of September 17, 2020, more than 10 days after Defendant's receipt of the Collateral, Mr. Deng had neither received notification that the secured loan had been finalized nor notification that Defendant would fund the same, and thus, Mr. Deng requested that Defendant return the Collateral.

14.      Importantly, and as further alleged in Mr. Deng's Arbitration Demand, at the time of Mr. Deng's request that Defendant return the Collateral, Defendant still had not funded the secured loan contemplated under the Agreement.

15.     As Mr. Deng explained in his Arbitration Demand, rather than return the entire amount of Mr. Deng's Collateral, Defendant improperly only returned 1,365,000 shares of the Collateral, and improperly retained nine percent (9%) of the Collateral as an "early termination fee" in violation of the terms of the Agreement.

---

[2] Vstock Transfer is an SEC-registered stock transfer firm serving private companies, IPO's, and issuers listed on the New York Stock Exchange, NASDAQ, and OTC Markets.

16.     As Mr. Deng has set forth in his Arbitration Demand, Defendant failed to finalize the loan transaction prior to Mr. Deng's request for the return of the Collateral, and thus, Defendant was not entitled to retain an "early termination fee."

17.     Accordingly, Mr. Deng's Arbitration Demand alleges that Defendant breached the Agreement.

18.      Mr. Deng's Arbitration Demand details his intent to seek an arbitration award for the return of his wrongfully retained 135,000 shares of GLG common stock, or in the alternative a monetary award equal to the value of his wrongfully retained 135,000 shares of GLG Common Stock, and costs.

**B.   _Defendant's Attempt to Bring TD Holdings into Arbitration as Third-Party Respondent_**

19.     On December 18, 2020, Defendant submitted its "Answer to Mr. Deng's Notice of Arbitration and Notice of Arbitration to TD Holdings, Inc." ("Defendant's Notice of Arbitration"), in which Defendant purported to join TD Holdings as a Third-Party Respondent.  A copy of the Defendant's Notice of Arbitration is attached hereto as **Exhibit B**.

20.     Defendant's Notice of Arbitration alleges that TD Holdings is liable to Defendant for Mr. Deng's alleged repudiation or alleged termination of the Agreement under several theories, including agency of an undisclosed principal, assignment of Mr. Deng's rights and obligations under the Agreement, and tortious interference, the latter theory being proposed as an alternative basis of liability if TD Holdings is merely found to have only "assumed" the obligation to arbitrate but not found to be an undisclosed principal of Mr. Deng's or an assignee of Mr. Deng's rights and obligations under the Agreement. *See id.*

21.     In its attempt to invoke ICDR jurisdiction under its various theories, Defendant's Notice of Arbitration  alleges a series of innuendos and insinuations, including:

a.   TD Holdings' office is within "five kilometers from Mr. Deng's address" in the same city in China.[3] *See id*., ¶ 36.

b.   TD Holdings' Chief Executive Officer communicated with the independent loan broker who assisted with Mr. Deng's transaction "exclusively in Mandarin" using an app, "which by degrees, and upon translation, shows that TD Holdings was or became an interested party in the transaction." *See id*., ¶ 10.

c.   An independent advisor  told an independent loan broker via an app that Mr. Deng had delegated a TD Holdings Board Member to assist with relevant procedures for carrying out transferring the GLG Common Stock. *See id*., ¶ 11.

d.   Someone other than Mr. Deng had answered his phone once when Defendant tried to call Mr. Deng's New York phone number. *See id*., ¶ 18.

e.   Mr. Deng "proffered" that Defendant's communications had gone into Mr. Deng's spam folder. *See id*., ¶ 18.

f.   TD Holdings CEO informed the independent loan broker that coordination of the loan or other cooperation for TD Holdings or its shareholders would be delegated to a TD Holdings executive. *See id*., ¶ 21.

g.   A TD Holdings executive wrote to Mr. Deng's counsel on a first name basis regarding the arbitration proceedings. *See id*., ¶ 24.

22.    Defendant admits that TD Holdings is not a signatory to the Agreement, but insists that statements allegedly made by TD Holdings personnel mean that TD Holdings "assumed the

---

[3] It is obvious that such a "fact" has no bearing whatsoever on Defendant's allegations, but even less so when one considers that the addresses Defendant cites for both TD Holdings and Mr. Deng are in the downtown district of a city.

obligation" to arbitrate "because it commenced and continues to participate in these proceedings," or "Mr. Deng evidently assigned his rights and obligations to TD Holdings." Id., ¶ 39.

23.     TD Holdings cannot be compelled to arbitrate Defendant's claim because TD Holdings is not a party to the Agreement and has not "commenced" or "assumed" and was not "assigned" any rights or obligations of the Agreement. *See id.*, ¶ 39.

24.     TD Holdings has not participated in the arbitration between Mr. Deng and Defendant, and has expressly refused to do so.

25.     Defendant and Mr. Deng are involved in an arbitration proceeding that arises out of those parties' disputes over the Agreement.  TD Holdings is not a party to the Agreement and disavows any rights or obligations under that Agreement.

26.      Defendant's Notice of Arbitration asserts claims against Mr. Deng and answers claims alleged by Mr. Deng that arise solely and entirely out of the Agreement, to which TD Holdings is not a party.

27.      TD Holdings will be irreparably harmed if it is compelled to arbitrate this dispute in the absence of any agreement or obligation to arbitrate.

28.     Whether TD Holdings can be compelled to arbitrate the claims asserted against it by Defendant in the  ICDR proceedings (the "ICDR Action") is an issue that affects the parties' legal interests with immediacy.  Unless Defendant is enjoined from arbitrating with TD Holdings the claims asserted in the ICDR Action, TD Holdings will have to answer or otherwise plead in response to Defendant's Notice of Arbitration claims, in violation of TD Holdings' right to decline arbitration when it has not agreed to arbitrate.  Declaratory and injunctive relief is necessary to prevent TD Holdings from having to arbitrate claims it did not agree to arbitrate.

## IV.   CLAIMS

### COUNT I
### DECLARATORY JUDGMENT

29.     TD Holdings repeats and realleges each of the allegations contained in Paragraphs 1 through 27 above as if fully set forth herein.

30.     No agreement to arbitrate exists between TD Holdings and Defendant.

31.     According to its Notice of Arbitration, Defendant seeks arbitration with TD Holdings pursuant to Articles 3 (Answer and Counterclaim) and 7 (Joinder) of the ICDR Rules. However, ICDR Rules state that its rules apply "[w]here parties have agreed to arbitrate disputes under [its] Rules."  ICDR Arbitration Rules, Article 1: Scope of These Rules. TD Holdings has not agreed to arbitrate at all, and therefore has not agreed to arbitrate under ICDR Rules.

32.     It is well settled that parties "cannot be forced to submit to arbitration if they have not agreed to do so." *Armont v. K12 (Fla. Cyber Charter Acad. - FLCCA)*, No. 19-CV-00334, 2019 WL 7666549, at *7 (M.D. Fla. Dec. 26, 2019), *report and recommendation adopted*, No. 19-CV-00334, 2020 WL 376957, at *1 (M.D. Fla. Jan. 23, 2020).

33.     As one court held, "[a] Plaintiff can raise a genuine issue of fact regarding the validity of an arbitration agreement by (1) making an unequivocal denial that there was an agreement, and (2) producing evidence to substantiate the denial" *Sinclair v. Wireless Advocates, LLC*, No. 20-CV-60886-RAR, 2020 WL 6679192, at *2 (S.D. Fla. Nov. 12, 2020) (quoting *Hilton v. Fluent*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018) (citation and internal quotations omitted).

34.     Importantly, as the *Sinclair* Court noted, "[t]his determination is to be made solely by the Court with no thumb on the scale towards finding a valid arbitration agreement, so 'while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been

made.'" *Sinclair, supra*, at *2 (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (citation omitted)).

35.     Declaratory relief is appropriate because the dispute as to whether there is an agreement to arbitrate between the parties is definite and concrete, affecting the parties' adverse legal interests with immediacy. TD Holdings requests, therefore, a declaratory judgment from this Court pursuant to 28 U.S.C. § 2201(a) that TD Holdings has no obligation to arbitrate Defendant's claims.

## COUNT II
## INJUNCTIVE RELIEF

36.     TD Holdings repeats and realleges each of the allegations contained in Paragraphs 1 through 27 above as if fully set forth herein.

37.     TD Holdings will suffer immediate and irreparable harm if it is compelled to arbitrate claims it did not agree to arbitrate.

38.     TD Holdings has a likelihood of success on the merits.  There is no arbitration agreement between TD Holdings and Defendant, and TD Holdings does not agree to arbitrate any of Defendant's claims against TD Holdings.  Accordingly, TD Holdings lacks any obligation to arbitrate any claims brought by Defendant against TD Holdings in the ICDR Action.

39.     TD Holdings has no adequate remedy at law.

40.     TD Holdings is entitled to preliminary and permanent injunctive relief enjoining Defendant from further proceedings against TD Holdings in the ICDR Action.

## V.  ATTORNEYS' FEES, COURT COSTS, AND EXPENSES

41.     TD Holdings repeats and realleges each of the allegations contained in Paragraphs 1 through 27 above as if fully set forth herein.

42.     TD Holdings has retained the undersigned counsel to prosecute this action and has agreed to pay all reasonable and necessary attorneys' fees, court costs, and expenses incurred.

## VI.   REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION

43.     TD Holdings repeats and realleges each of the allegations contained in Paragraphs 1 through 27 above as if fully set forth herein.

44.     TD Holdings has not agreed to arbitrate any dispute with Defendant before ICDR or any other arbitral forum, and Defendant's prosecution of the ICDR Action before ICDR would impair TD Holding's right to have any such dispute heard before a court of competent jurisdiction. As a result, TD Holdings is entitled to a temporary and permanent injunction restraining Defendant from further prosecuting the ICDR Action against TD Holdings.  Defendant's actions have caused and will continue to cause TD Holdings irreparable harm and have left it with no adequate remedy at law.  Moreover, the relief requested will favor the public's interest, TD Holdings is substantially likely to prevail on the merits of its claims, and the hardships imposed on Defendant by the requested injunction will not outweigh the harm to TD Holdings if one is not granted.  Accordingly, the Court should enter a permanent injunction restraining Defendant and its officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with it from further prosecuting the ICDR Action against TD Holdings.

## VII.   REQUESTS FOR RELIEF

For these reasons, TD Holdings, Inc. respectfully requests the Court to:

A.     Enter a declaratory judgment that TD Holdings has no obligation to arbitrate the claims asserted by Defendant in the ICDR Action;

B.     Issue a temporary injunction enjoining Defendant, and its officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with Defendant from proceeding with the ICDR Action against TD Holdings;

C.    Issue a permanent injunction enjoining Defendant, and its officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with Defendant from proceeding with the ICDR Action against TD Holdings; and

D.    Grant TD Holdings such other and further relief, at law or in equity, to which it is justly entitled.

Date:  January 19, 2021                    Respectfully submitted,

                                           Sallah Astarita & Cox, LLC
                                           *Counsel for Plaintiff*
                                           3010 N. Military Trail, Ste. 210
                                           Boca Raton, Florida 33431
                                           Tel.: (561) 989-9080
                                           Fax: (561) 989-9020

                                           /s/James D. Sallah
                                           **James D. Sallah, Esq.**
                                           Fla. Bar No. 0092584
                                           Email: jds@sallahlaw.com
                                           **Joshua A. Katz, Esq.**
                                           Fla. Bar No. 0848301
                                           Email: jak@sallahlaw.com